UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CHRISTINA HERNANDEZ,**[1]
**Plaintiff,**

**v.** **Case No. 25-CV-845**

**FRANK BISIGNANO,**
**Defendant.**

---

## DECISION AND ORDER

---

### 1. Background

Christina Hernandez is morbidly obese, standing four feet and eleven inches tall and weighing 202 pounds, has an eighth-grade education, and suffers from hepatitis C, cirrhosis of the liver, sleep apnea, depression, and anxiety. As a result of these limitations, she alleges she has been disabled since December 1, 2019, and seeks social security disability insurance benefits. She was last insured on December 31, 2022.

Administrative Law Judge (ALJ) William Shenkenberg, in a decision that became the final decision of the Commissioner after the Appeals Council declined to review it (Tr. 1300-03), concluded that Hernandez was not disabled because, through the date last insured, she

---

[1] The plaintiff's name is variously spelled Christina and Cristina. (*See, e.g.,* Tr. 182.) The court uses Christina because it is the spelling she used on her complaint and thus is the spelling that appears on the docket.

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolding and can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to pulmonary irritants (such as fumes, odors, dusts and gases) and hazards (such as moving machinery and unprotected heights). She is able to understand, remember, and carry out simple instructions and perform simple routine tasks in a position having only occasional decision making and few if any changes. She can have no fast-paced production requirements, like high-speed production line or hourly quotas. She is able to maintain concentration, persistence, and pace for simple tasks in two-hour increments, over the course of a normal workday and work week. She can have occasional interaction with the public, coworkers, and supervisors.

(Tr. 1317.)

Hernandez filed this action on June 13, 2025. (ECF No. 1.) It is her second such case. The Honorable William E. Duffin on February 13, 2024, reversed and remanded a prior decision of the Commissioner. *See Hernandez v. O'Malley*, 23-cv-00349-WED (ECF No. 22); (Tr. 1417-43.)

**2. Standard of Review**

A federal court reviews an ALJ's decision deferentially. *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). It "will reverse an ALJ's decision 'only if it is the result of an error of law or it is not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Yokosh v. Bisignano*, 170 F.4th 631 (7th Cir. 2026) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023) (internal quotation marks omitted)). Courts "examine the entire administrative record but do not 'reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's.'" *Padua v. Bisignano*, 145 F.4th 784, 789 (7th Cir. 2025) (quoting *Gedatus v.*

*Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Courts, however, "will not simply 'rubber-stamp' the ALJ's decision." *Padua v. Bisignano*, 145 F.4th 784, 789 (7th Cir. 2025) (quoting *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). "[A] decision 'cannot stand if it lacks evidentiary support or an adequate discussion of the issues.'" *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025) (quoting *Lopez ex rel. Lopez v. Barnhart*," 336 F.3d 535, 539 (7th Cir. 2003)). Further, "[i]f the ALJ fails to build an 'accurate and logical bridge from the evidence to its conclusion,' reversal is warranted." *Padua v. Bisignano*, 145 F.4th 784, 789 (7th Cir. 2025) (quoting *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

**3. Analysis**

**3.1. Psychological Consultative Examiner Opinions**

An ALJ must evaluate a medical opinion by considering its (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the provider's specialization; and (5) any other relevant factors. 20 C.F.R. § 404.1520c(c). Consistency and supportability are the most important factors. 20 C.F.R. § 404.1520c(b)(2). "Failure to adequately discuss supportability and consistency requires remand." *Shaun v. Bisignano*, No. 3:24-CV-528-SJF, 2026 U.S. Dist. LEXIS 14639, at *13 (N.D. Ind. Jan. 27, 2026) (quoting *Willis v. Acting Comm'r of Soc. Sec.*, Case No. 3:21-CV-178 JD, 2022 U.S. Dist. LEXIS 116679, 2022 WL 2384031, at *3 (N.D. Ind. July 1, 2022)). An ALJ cannot simply state a conclusion or offer an unadorned and perfunctory explanation such as the opinion being inconsistent with the overall record. *See, e.g., David L.J. v. Bisignano*, No. 1:25-cv-01399, 2026 U.S.

Dist. LEXIS 61856, at *8-*9 (N.D. Ill. Mar. 24, 2026); *Lance H. v. Bisignano*, No. 1:23-cv-16944, 2026 U.S. Dist. LEXIS 67633, at *9 (N.D. Ill. Mar. 30, 2026) ("an ALJ must do more than summarize evidence and announce conclusions"). The ALJ must point to specific facts in the record that support his conclusion.

Jesse Frey, Psy.D., examined Hernandez and found her to have marked limitations in the following domains: (1) understand remember and carry out simple instructions; (2) respond appropriately to supervisors and coworkers; (3) maintain concentration attention and work pace; (4) withstand routine work stress; and (5) adapt to changes. (Tr. 1186.)

The ALJ acknowledged that Frey's opinions were supported by certain of his findings and observations. Nonetheless, the ALJ ultimately found these opinions "of limited persuasive value" because: (1) mental status signs noted by her treating medical providers were largely unremarkable; (2) she prepares and plans meals; (3) "drives at least some"; (4) goes places alone; (5) she is pleasant and cooperative with providers; (6) she has not required "highly structured or intensive mental health care"; (7) has "adequate grooming and hygiene, fair to good insight and judgment, and, at times, normal mood and affect"; and (8) tends "to at least some of her daily activities." (Tr. 1331.)

Hernandez argues that these facts are insufficient to sustain the ALJ's conclusion. Or at a minimum, the ALJ failed to adequately explain why these facts supported his conclusion. Hernandez characterizes the ALJ's explanation as simply summarizing some positive findings and concluding that Frey's opinion was not

persuasive. (ECF No. 13 at 9.) She argues that this sort of summary followed by a conclusion lacks the requisite accurate and logical bridge. (ECF No. 13 at 9.)

It is clear from the ALJ's decision that Frey's opinion was an outlier. His opinions were significantly more limiting than the opinions of the psychological consultants that assessed Hernandez's claim initially and on reconsideration, as well as the psychologist who testified as a medical expert at the hearing. (*See* Tr. 1331-32.) The ALJ generally found those opinions more persuasive.

It is also important to underscore that the ALJ did not categorically reject the limitations Frey identified. He concluded merely that many of those limitations were not as severe as Frey found. It will generally be easier for an ALJ to provide an adequate explanation for his conclusion when he accepts the existence of the impairments identified by a medical provider but rejects merely the extent of those impairments. Thus, in noting Hernandez's ability to drive, prepare meals, and go out alone, the ALJ was not suggesting these facts meant that she lacked problems concentrating. (*Cf.* ECF No. 13 at 10-11.) Rather, the ALJ was noting merely that these were facts that supported the conclusion that her limitations in this domain were not as severe as Frey found. While a person may have some degree of difficulty concentrating and still be able to drive occasionally, it is a matter of common sense within the ken of an ALJ to recognize that any operation of a motor vehicle requires some degree of concentration. As such a claimant's ability to drive may be a factor to support a finding that a claimant has less than a marked limitation in concentration.

Similarly, the ALJ was not suggesting that a person cannot have marked limitations in handling stress if she is able to maintain adequate grooming and hygiene. (*Cf.* ECF No. 13 at 12.) Nor was he suggesting that an ability to get along with medical providers necessarily equated with an ability to get along with coworkers and supervisors in a full-time work environment. (*Cf.* ECF No. 13 at 11.) Rather, the ALJ was suggesting only that these facts tended to support the inference that Hernandez's limitations were not as severe as Frey found.

The ALJ's discussion of Frey's opinions complied with 20 C.F.R. § 404.1520c(c). He acknowledged that Frey's opinions were supported by the abnormal mental status signs Frey identified. (Tr. 1331.) But it was the consistency factor that ultimately led the ALJ to discount Frey's opinions. Placing greatest emphasis on the consistency of Frey's opinions was logical given that mental health impairments routinely result in variable functioning. *See, e.g.*, *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Frey's opinions, arising from a single consultative examination, may reflect Hernandez's functioning on that day. Conversely, reliance on a claimant's functioning on "good days" may create a misleadingly rosy picture of the claimant's ability to engage in sustained fulltime work.

Hernandez does not allege that the ALJ engaged in impermissible cherry-picking. The ALJ appropriately noted that Hernandez's own medical providers did not note the limitations Frey identified. (Tr. 1331.) Her activities of daily living, likewise, were inconsistent with the marked limitations Frey found. Again, the ALJ did not say that a person who is "pleasant and cooperative with adequate grooming

and hygiene" (Tr. 1331) cannot suffer from anxiety, depression, and the variety of limitations Hernandez alleged. And he certainly did not say that adequate grooming and hygiene equated to an ability to engage in substantial gainful activity. He stated only that all these factors led him to conclude that Frey's opinion that Hernandez did suffer marked limitations was not entirely persuasive. Read together, the ALJ's explanation for partially discounting Frey's opinion was adequate, provided sufficient detail so the court can trace his reasoning, and was supported by substantial evidence.

### 3.2. Mental Residual Functional Capacity

The ALJ found that Hernandez was moderately limited in her ability to maintain concentration, persistence, and pace. Because a moderate limitation may limit but not necessarily preclude substantial gainful activity, this is one of the domains of mental functioning that an ALJ must account for in his questions to a vocational expert and any RFC finding when it is impaired. *See Moy v. Bisignano*, 142 F.4th 546, 555 (7th Cir. 2025); *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Despite commonly stated in the conjunctive, concentration, persistence, and pace constitute a single "broad functional area[]," not three. *See* 20 C.F.R. § 404.1520a(c)(3). An ALJ who finds a claimant moderately limited in concentration, persistence, and pace is not finding that the claimant has a moderate limitation in concentration, a moderate limitation in persistence, and a moderate limitation in pace. Rather, "[a] moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in *at least one of* those areas, not necessarily

all three." *Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) (emphasis in original) Thus, concentration, persistence, and pace is a single domain, albeit one with multiple facets. *See Varga v. Colvin*, 794 F.3d 809, 815-16 (7th Cir. 2015) ("[T]he agency forms from which these terms emanate often lump concentration, persistence, and pace together as an umbrella category. The PRT form, for example, treats 'concentration, persistence, or pace' as one broad category of functioning."); *see also id.* at 814 (identifying seven areas related to concentration, persistence, and pace).

A problem arises when an ALJ finds a claimant limited in concentration, persistence, and pace but fails to address all relevant facets of the domain. "To enable meaningful review, the ALJ must at least describe what the moderate limitations are and how they affect the claimant's ability to work." *Moy v. Bisignano*, 142 F.4th 546, 555 (7th Cir. 2025). Whether the ALJ's explanation is sufficient will depend on the nature of the claimant's limitations. *See, e.g.*, *Morrison v. Saul*, 806 F. App'x 469, 473-74 (7th Cir. 2020).

Thus, when an ALJ finds that a claimant is limited in concentration, persistence, and pace, the ALJ generally must either articulate the claimant's specific limitations or address all facets of the domain in his RFC finding. An exception may be an instance where it is clear that a particular facet is not relevant. *See Tanya C. v. Kijakazi*, No. 20-CV-958, 2021 U.S. Dist. LEXIS 232622, at *14 (E.D. Wis. Dec. 6, 2021) ("It is clear from the ALJ's decision that he found Tanya C. to be limited only with respect to concentration."). Otherwise, the ALJ will generally fail to build the requisite accurate and logical bridge. A reviewing court would be left to guess whether

the omission of a facet of the domain was a result of an error or the ALJ finding that the claimant's limitation in the domain did not affect the omitted facet.

For example, an ALJ likely errs if he finds that a claimant is moderately limited in concentration, persistence, and pace but simply limits the claimant to simple, routine, and repetitive tasks with no hourly production quotas. *See Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015). Such a RFC may address aspects of concentration and pace, but a person who cannot maintain her effort (*i.e.* persist) over a workday on a consistent and sustained basis (taking into account ordinary breaks) will not be able to engage in substantive gainful activity. This was the error that required remand when Hernandez's claim was last before a federal judge. (*See* Tr. 1430-33.)

The ALJ's present decision is very similar to that which Judge Duffin found required remand. The ALJ again found that Hernandez had a moderate limitation in maintaining concentration, persistence, and pace. He found that she maintained the RFC "to understand, remember, and carry out simple instructions and perform simple routine tasks in a position having only occasional decision making and few if any changes. She can have no fast-paced production requirements, like high-speed production line or hourly quotas." (Tr. 1317.) He included all these limitations in his question to the vocational expert. (Tr. 1365-66.) But the ALJ made an additional finding that was absent from the prior decision: "She is able to maintain concentration, persistence, and pace for simple tasks in two-hour increments, over the course of a normal workday and work week." (Tr. 1317.) That additional finding

remedied the error that Judge Duffin found because with it, the ALJ addressed all relevant facets of the concentration, persistence, and pace domain. It was likewise consistent with the law of the case doctrine.

Hernandez nonetheless argues that this two-hour increments finding was itself error because to find that a claimant is able to maintain concentration persistence and pace in two-hour increments is to find that the claimant has no limitation at all. Given traditional breaks, a workday is divided into two-hour increments. Thus, Hernandez argues that finding that she can maintain concentration, persistence, and pace in two-hour increments is internally inconsistent with the ALJ's finding that she had a moderate limitation in maintaining concentration, persistence, and pace.

Hernandez's argument appears to reflect the mistaken view that by finding her to have a moderate limitation in the domain of concentration, persistence, and pace, the ALJ found her to have a moderate limitation in concentration, a moderate limitation in persistence, and a moderate limitation in pace. Again, how long a claimant can engage in sustained work (*i.e.*, persistence) is only one facet of the concentration, persistence, and pace domain.

The facets of the concentration, persistence, and pace domain may be seen as moving on an interdependent sliding scale. As the complexity of work (and thus concentration required) increases, the claimant's ability to maintain concentration for a duration consistent with competitive work (*i.e.* persistence) may decrease. Concentration may similarly affect the pace facet (and vice versa) and pace may

function similarly with respect to the other facets. To borrow from the world of business, it is a sort of triple constraint problem or, in economics, a matter of multi-objective optimization. The task for the ALJ is to assess whether and if so, how, all relevant facets may fall into balance in a manner consistent with an individual claimant's RFC to engage in substantial gainful activity. The balancing must be individualized because, for example, one claimant's ability to maintain concentration may depend on slow-paced work whereas another may demand a degree of speed to avoid growing bored and losing focus.

The ALJ's finding that Hernandez was capable of maintaining concentration, persistence, and pace over two-hour increments was not inconsistent with a finding that she had a moderate limitation in that domain. Rather, it was an essential component of his conclusion that, despite her moderate limitation, Hernandez was nonetheless capable of fulltime work. Because workdays are traditionally divided with breaks at two-hour intervals, *see Nanette H. v. Bisignano*, No. 24 cv 50067, 2025 U.S. Dist. LEXIS 156503, at *13 (N.D. Ill. Aug. 13, 2025) (quoting *Warren v. Colvin*, No. 12CV3298, 2013 U.S. Dist. LEXIS 39720, 2013 WL 1196603, at *5 (N.D. Ill. March 22, 2013)), to find the ALJ's conclusion internally inconsistent would suggest that any finding of a moderate limitation in concentration, persistence, and pace would be work preclusive. That is not the law. *See Moy v. Bisignano*, 142 F.4th 546, 555 (7th Cir. 2025).

Hernandez also argues that the ALJ erred by "using general terms, seen in virtually all ALJ decisions …." (ECF No. 13 at 17.) Instead, "the ALJ should have

reviewed the record, determined what problems Plaintiff had concentrating, persisting, or maintaining pace, determined the extent of those problems, what caused those problems, and included the precipitating or exacerbating factors in the RFC assessment." (ECF No. 13 at 17 (citing *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-20 (7th Cir. 2010)).)

The cases Hernandez cites do not support her contention as to the specific obligations of the ALJ. Rather, the cited cases discuss the sufficiency of hypotheticals presented to vocational experts and instances where ALJs inappropriately limited a claimant to simple, routine, repetitive tasks (*i.e.*, unskilled work) as a means to address limitations in concentration, persistence, and pace. Here, the ALJ identified Hernandez's specific limitations and, consistent with his RFC finding, included those specific limitations in the hypothetical that he presented to the vocational expert. (Tr. 1365-66.) This was all that was required.

Hernandez also alleges that the ALJ erred by failing to adequately explain his finding that she is capable of meeting a daily but not an hourly production quota. (ECF No. 13 at 18.) The premise of her argument appears to be that a daily production quota is merely the cumulative of eight hourly production quotas. The result is that a worker with variable performance who falls below the de facto hourly quota must work harder than the average worker some other hour in order to meet the daily quota.

Courts have levied similar criticisms at the hourly versus daily production quotas. *See, e.g.*, *Dawn W. v. Berryhill*, No. 17 cv 0190, 2019 U.S. Dist. LEXIS 80030, at *9 (N.D. Ill. May 13, 2019) (citing *Novak v. Berryhill*, No. 15 C 50236, 2017 U.S. Dist. LEXIS 46264, 2017 WL 1163733, at *7 (N.D. Ill. Mar. 29, 2017)). And a daily quota, or an elimination of production quotas altogether, is not a proxy for addressing a concentration, persistence, or pace limitation. *See DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019). But it is too superficial to regard a daily production quota as simply a series of hourly production quotas. While not a broad proxy for a concentration, persistence, and pace limitation, limiting a claimant to jobs with only daily production quotas may appropriately be one aspect of a claimant's RFC.

An hourly production quota demands invariable consistency, and the pace is often not set by the worker but by, for example, a production line, whereas a daily production quota will allow for natural ebbs and flows in worker productivity. For example, the ALJ noted that Hernandez reported having more energy in the morning. (Tr. 1317-18.) A daily production quota would obviously be both less stressful to a worker and better suited to a worker who may have intermittent and variable difficulties concentration, persistence, and pace; no further explanation was required by the ALJ. *Cf. Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024) (finding no error in the ALJ's RFC that excluded work with a "'fast paced production quota or rate' and that 'any production requirements should be more goal oriented, such as based on a daily or weekly or monthly quota'"); *Schoch v. Bisignano*, No. 25-CV-151-JDP, 2026 WL 851196, at *3-*4 (W.D. Wis. Mar. 27, 2026) (finding no error in ALJ precluding

"work with production requirements such as strict hourly quotas" but permitting "work with daily, weekly or monthly quotas"); *Shamp v. Bisignano*, No. 24-CV-516-JDP, 2025 WL 3012217, at *3 (W.D. Wis. Oct. 28, 2025) (same).

The ALJ's conclusion that, notwithstanding Hernandez's moderate limitation in concentration, persistence, and pace domain, she maintained the ability to engage in substantial gainful activity with certain limitations was consistent with the law and supported by substantial evidence. Accordingly, Hernandez has failed to demonstrate that the ALJ erred in this aspect of his decision.

### 3.3. Fatigue

Hernandez argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ failed to account for Hernandez's fatigue. (ECF No. 13 at 19-22.) She notes that fatigue is a common symptom of cirrhosis of liver and end stage liver disease, and she contends that this is compounded by her sleep apnea and morbid obesity. (ECF No. 13 at 19.)

The ALJ's prior failure to adequately address Hernandez's fatigue was another reason why Judge Duffin previously remanded this action. (Tr. 1437-38.) On remand, the ALJ did not repeat this error.

In his summary of the medical evidence, the ALJ frequently referenced Hernandez's complaints of fatigue. In doing so, the ALJ noted that there were instances where Hernandez reported debilitating fatigue but also instances, particularly more recently, where she reported little to no fatigue. In his discussion, the ALJ referred to these inconsistencies and improvements, and noted that

Hernandez's impairments seemed to improve once she began using a CPAP machine to treat her sleep apnea. (Tr. 1329.) He acknowledged that chronic liver disease, cirrhosis of the liver, and sleep apnea all could be expected to cause fatigue but concluded that her symptoms were not as severe as she alleged. Because of her fatigue, the ALJ found that her RFC was limited with regards to activities likely to cause excessive fatigue or that would be hazardous for a person suffering excessive fatigue. He concluded that she "can never climb ladders, ropes, or scaffolds and can frequently climb ramps or stairs" and "[s]he should also avoid concentrated exposure to workplace hazards …." (Tr. 1330.)

Hernandez also argues that the ALJ did not explicitly address her obesity vis-à-vis her fatigue. However, the ALJ did acknowledge "[t]he claimant has also consistently been obese during the period of consideration with a BMI of more than 40 kg/m2, as noted above, which the undersigned finds further reduces her strength, stamina, and endurance." (Tr. 1329.) Moreover, the ALJ did not arrive at Hernandez's RFC by determining what fatigue a person with chronic liver disease, cirrhosis of the liver, and sleep apnea would likely experience. If he had, it may have been error for the ALJ to not consider how the fatigue that affects a person with end stage liver disease might be exacerbated if the person is also obese. *See* SSR 19-2p. Rather, the ALJ assessed Hernadez's fatigue in light of all the relevant evidence to account for fatigue as she actually experienced it. In other words, this individualized subjective assessment necessarily accounted for Hernandez's obesity. Consequently, Hernandez

has not shown the ALJ erred in his consideration of how her obesity may affect her fatigue.

Hernandez also notes that symptoms like pain can affect mental impairments. (ECF No. 13 at 22.) Although she argues that there is nothing in the ALJ's decision that indicates he considered the combined effects of her pain and mental impairments, she does not develop this argument and thus has failed to show that the omission was material. *See Albert v. Kijakazi*, 34 F.4th 611, 616 (7th Cir. 2022)

**3.4. Symptom Severity**

When an ALJ finds that a claimant has an underlying impairment that is likely to cause the symptoms the claimant identifies, the ALJ must assess the severity of the claimant's symptoms. *See* SSR 16-3p. "In doing so, the ALJ must consider the objective medical evidence; the individual's subjective statements; information provided by medical sources; and the claimant's level of pain, medication, treatment, and daily activities." *Swiecichowski v. Dudek*, 133 F.4th 751, 757 (7th Cir. 2025).

This analysis, which used to be referred to as a credibility finding, is never an easy task. Thus, courts and claimants frequently find fault in an ALJ's assessment of a claimant's symptoms. But the court's review is deferential, and the court can upset an ALJ's finding only if it is patently wrong. *Caleb C. v. Bisignano*, No. 23 CV 5039, 2025 U.S. Dist. LEXIS 185703, at *5 (N.D. Ill. Sep. 22, 2025) (quoting *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022)).

The ALJ began:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 1318.) This much-criticized boilerplate, *see, e.g.*, *Wolvin v. Kijakazi*, No. 21-CV-1328, 2023 U.S. Dist. LEXIS 11592, at *5 (E.D. Wis. Jan. 24, 2023), is problematic only if the ALJ ultimately fails to follow through and explain what he found to be inconsistent, *see Hostetter v. Saul*, 841 F. App'x 983, 986-87 (7th Cir. 2021).

What follows over the next roughly nine pages of the ALJ's decision is a general discussion of the medical evidence. (Tr. 1318-27.) Within that summary there are details that both support and undermine Hernandez's report as to the severity of her symptoms. The court, however, cannot rely on a mere summary of the evidence to construct a plausible basis for the ALJ's conclusion regarding the severity of a claimant's symptoms. Rather than speculation, the court must rely on specific rationale that the ALJ articulated. To hold otherwise would mean that an ALJ would need to offer only bald conclusions provided he also offered a comprehensive summary of the evidence (or perhaps simply incorporated the medical record by reference); it would then be up to the court to construct a rationale for the conclusion.

The ALJ's explanation did not begin until page 1327 of the record. At the outset of his explanation, the ALJ noted that Hernandez completed an Adult Function Report on September 10, 2021 (*see* Tr. 1318 (discussing Tr. 218-25)) wherein she alleged extreme limitations, the severity of which were largely not supported by the

record. (Tr. 1327.) The ALJ noted that Hernadez reported significant mental health symptoms, but on examination, medical providers generally found her to have good cognitive and social functioning. (Tr. 1327-28.) Physically, findings were generally unremarkable. (Tr. 1328-29.) Her complaints of fatigue were inconsistent and appeared to improve particularly once she began using her CPAP machine for her mild sleep apnea. (Tr. 1329.) Thus, the ALJ acknowledged that Hernandez likely has some fatigue given her medical impairments but concluded that it was not as severe as she reported. (Tr. 1329.) The ALJ also noted inconsistencies in Hernandez's reported daily activities such as driving, preparing meals, or going out of her home alone. (Tr. 1329.) The ALJ was careful to acknowledge that these activities did not equate to an ability to engage in full-time work; he was relying them only to find that Hernandez's symptoms were not as severe as she alleged. (Tr. 1329.)

Hernandez argues that the ALJ's symptom severity analysis was deficient because he offered only conclusions and failed to provide the "requisite analysis of the evidence." (ECF No. 13 at 23.) But as Hernandez goes on to discuss in the next paragraph of her brief, the ALJ *did* provide reasons for discounting the severity of her symptoms, specifically, her daily activities. (ECF No. 13 at 23.) She nonetheless argues that the ALJ's analysis was flawed because what the ALJ found to be inconsistencies were minor and may reflect merely variable functioning or changes in Hernadez's condition. (ECF No. 13 at 23-24.)

Hernandez's arguments reflect the inherent difficulties of an ALJ's task. Even the most extensive record will contain only snapshots of a claimant's functioning. The

ALJ must extrapolate from that limited information to determine the claimant's RFC. Such evidence will routinely point in different directions. So long as it is supported by substantial evidence—which contrary to what the term may suggest means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010))—the court cannot remand simply because the ALJ chose one direction over another.

A claimant who testifies at a hearing to symptoms different than those reflected in the historical medical records will almost always be able to argue that the discrepancy is a result of a change in her condition. But such an argument merely identifies the possibility of another way to interpret the evidence. For this argument to be persuasive and serve as a basis for remand, it must be accompanied by evidence other than the inconsistency itself to suggest that the inconsistency was the result of a change in the plaintiff's condition.

The only such evidence Hernandez identifies is with respect to her drowsiness while driving. She reported being drowsy while driving in April 2022 and denied any such drowsiness in October 2022. In the interim, she began using a CPAP machine for her sleep apnea. (Tr. 1972.)

The ALJ, however, explicitly acknowledged that Hernandez' denial of drowsiness while driving was preceded by her beginning use of the CPAP machine. (Tr. 1329.) Thus, it appears that the ALJ was mentioning the change in Hernadez's drowsiness while driving not so much as a discrepancy but rather as evidence of

improvement. Insofar as the ALJ's discussion was unclear, there was no material error because even wholly disregarding his reference to Hernandez feeling drowsy while driving, the ALJ's analysis complied with SSR 16-3p. Significantly, the ALJ did not wholly reject Hernandez's self-reported limitations. He concluded merely that they were not as severe as she alleged and discounted them to a relatively minor degree. In doing so, he provided specific reasons for his conclusion. His conclusion was supported by substantial evidence and therefore the court must affirm. *See Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) ("If substantial evidence supports the ALJ's conclusions, the court 'must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding.'" (quoting *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016))). There may be instances where an ALJ seizes on perceived inconsistencies so trivial as to be inconsequential. *See Stage v. Colvin*, 812 F.3d 1121, 1126 n.1 (7th Cir. 2016). This, however, is not such an instance.

**4. Conclusion**

The ALJ's decision was consistent with the law and supported by substantial evidence. Accordingly, the court must affirm the final decision of the Commissioner.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is affirmed. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 5th day of August, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge